IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD FORT, | ) | CASE NOS. 1:16 CV 0551/ |
| | ) | 1:16 CV 1449 |
| Petitioner, | ) | |
| | ) | JUDGE JACK ZOUHARY |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| BRIGHAM SLOAN, Warden, | ) | JONATHAN D. GREENBERG |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |

## INTRODUCTION

Petitioner Richard Fort, a prisoner in state custody, has filed in this Court two petitions

for writ of habeas corpus pursuant to 28 U.S.C. § 2254, both challenging the constitutionality of

his convictions and sentences in *State v. Fort*, Case No. CR-13-572511-A.  He first filed a *pro se*

petition in Case No. 1:16 CV 0551 (Doc. No. 1), and later filed a petition through counsel in

Case No. 1:16 CV 1449 (Doc. No. 1).  As instructed by the Sixth Circuit Court of Appeals, this

Court treated the second petition as a motion to amend his original petition, which the Court

granted, and further held that the amended petition would govern both cases.  (*See* Case No. 1:16

CV 0551, Doc. No. 15; Case No. 1:16 CV 1449, Doc. No. 16.)  Respondent Warden Brigham

Sloan[1] filed a return of writ in Case No. 1:15 CV 0551 (Doc. No. 12) and a supplemental return

of writ in Case No. 1:16 CV 1449 (Doc. No. 17).  Fort did not file a traverse in either case.

This matter is before the undersigned by an automatic order of reference under Local

Rule 72.2 for preparation of a report and recommendation on Fort's petition or other case-

---

[1] Brigham Sloan is the warden of the Lake Erie Correctional Institution, where Fort is
incarcerated.  (Case No. 1:16 CV 0551, Doc. No. 12 at 1.)

dispositive motions.[2]  For the reasons stated below, the Court recommends Fort's amended petition be DISMISSED.

## FACTUAL BACKGROUND

Ohio's Eighth District Court of Appeals set forth the following facts underlying Fort's convictions:

> {¶ 1} Defendant-appellant Richard Fort was pulled over for a traffic violation and attempted to flee from police resulting in a high-speed chase. When police caught up with Fort, the investigating officer searched him incident to his arrest and found drugs, drug paraphernalia, a large amount of cash, and several cell phones, among other items. Fort was indicted on multiple counts that all included forfeiture specifications with two counts having major drug offender specifications attached. A jury found Fort guilty of the offenses, and the court found Fort guilty of the major drug offender specifications.
> . . .
>
> {¶ 3} Officers Kevin Pozek and Kyle French of the Maple Heights Police Department were involved in the arrest of Fort. Officer Pozek testified that in March 2013, he observed a vehicle drive straight through a turn-only lane. He activated his overhead lights and called for backup assistance. Once the vehicle stopped, Pozek turned on the personal camera attached to his uniform and approached the vehicle. The driver, later identified as Fort, rolled down his window slightly. Pozek testified that he immediately smelled marijuana and asked Fort where he had stored the marijuana inside of the car. Fort stated that it was inside his pocket and went to reach for it, but Pozek demanded that Fort keep his hands on the steering wheel. Fort then sped away while Pozek was standing next to the driver's side window.
>
> {¶ 4} Officer French arrived on scene, and the officers pursued Fort in their police vehicles. Fort was eventually apprehended when he stopped his car in a driveway. Pozek patted down Fort and searched the vehicle. Fort had a large amount of cash on him, and inside the vehicle, police found drugs and drug-related items. Specifically, the search yielded $9,436.73, five cell phones, a folding knife, a marijuana cigarette, 31.4 grams of crack cocaine, 8.6 grams of raw marijuana, a bag of coins, 137.7 grams of cocaine, a digital scale, and some electronics and clothing items.

---

[2] This case was transferred to the undersigned from Magistrate Judge Nancy A. Vecchiarelli upon her retirement.

2

*State v. Fort*, 17 N.E.3d 1172, 1174 (Ohio Ct. App. 2014).

These facts "shall be presumed to be correct," and Fort has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 360-61 (6th Cir. 1998).

## PROCEDURAL BACKGROUND

### A.    Trial Court

On March 22, 2013, the Cuyahoga County Grand Jury indicted Fort on the following charges:  three counts of trafficking in violation of Ohio Rev. Code § 2925.03(A)(2) (Counts 1 and 3), with Count 1 carrying a major-drug-offender specification and both counts carrying forfeiture specifications; one count of drug possession in violation of Ohio Rev. Code § 2925.11(A) (Count 2), with a major-drug-offender and forfeiture specifications; two counts of failure to comply in violation of Ohio Rev. Code § 2921.331(B) (Counts 4 and 5), each carrying a forfeiture specification; and one count of possessing criminal tools in violation of Ohio Rev. Code § 2923.24(A) (Count 6), with forfeiture specifications.  (Appx., Exh. 1.)[3]  Fort entered pleas of not guilty to all charges.  (Appx., Exhs. 2.)

On May 14, 2013, Fort filed a motion for the immediate return of the property seized by police.  (Appx., Exh. 3.)  He argued the property at issue could not be considered evidence and the cash was needed to help defray attorney fees.  He also asserted there was no reason for the State to retain his car.  (Appx., Exh. 3.)  The State opposed the motion.  (Appx., Exh. 4.)  After

---

[3] All citations to the state-court record refer to the appendix submitted with Respondent's original return of writ, filed in Case No. 1:16 CV 0551 (Doc. No. 12), which is designated as "Appx.".

conducting a hearing on the matter, the trial court denied Fort's motion as to the cash, vehicle, and personal items, but granted it as to Fort's work tools and used clothing.  (Appx., Exh. 5.)

The case proceeded to a jury trial on July 8, 2013.  (Appx., Exh. 33 at 325.)  After the State rested its case, Fort moved for an acquittal pursuant to Ohio R. Crim. P. 29.  (Appx., Exh. 6.)  Fort argued, with regard to the forfeiture specifications, that the State failed to prove that any of the personal items were connected to criminal activity.  *Fort*, 17 N.E.3d at 1175.  The trial court denied the motion in part and granted it in part, finding the State had met its burden demonstrating that the cash, vehicle, and cell phones were connected to Fort's drug trafficking, but there was insufficient proof with respect to the clothing and other personal items.  *Id.*  At the end of the trial, Fort renewed his motion for acquittal relating to the forfeiture specifications and drug charges, which the court denied.  (Appx., Exh. 6.)

On July 11, 2013, the jury returned its verdict, finding Fort not guilty of Count 3, a trafficking charge, and guilty of all other offenses and the forfeiture specifications.  (Appx., Exh. 33 at 325-26.)  The trial court found him guilty of the major-drug-offender specifications. (Appx., Exh. 33 at 325.)

On July 25, 2013, Fort moved for acquittal or for a new trial, which the State opposed. (Appx., Exh. 8, 9.)

On July 31, 2013, the trial court conducted a hearing regarding the forfeitures pursuant to Ohio law to determine whether the value of the property forfeited was disproportionate to the severity of the crimes for which Fort was convicted.  (Appx. at 325.)  On August 6, 2013, the court announced it did not.  (Appx., Exhs. 7 and 33 at 324-25.)

On August 14, 2013, the trial court held a sentencing hearing. (Appx., Exh. 10.) It merged Counts 1 and 2, and Counts 4 and 5, and sentenced Fort to eleven years' imprisonment for Count 1 and time served for Counts 4 and 6. (Appx., Exh. 10.) It also denied Fort's motion for acquittal or new trial. (Appx., Exh. 10.)

### B.      Direct Appeal

Fort, through the same counsel, filed a timely notice of appeal to the Eighth District Court of Appeals. (Appx., Exh. 11.) In his appellate brief, he raised the following assignments of error:

1.      Given a due process issue arises whenever an accused, by Motion, alleges that monies seized from him are needed for attorney fees and that issue is not appropriately resolved, it follows the Court erred and violated due process when it failed to seasonably address this issue and when it failed to properly resolve the issue in accordance with fundamental criteria.

2.      Due process is invariably denied when the trial court, despite a specific request (grounded on rule 12[f]) fails to articulate the required factual findings, and fails to indicate any legal theory underlying its decision not to return evidence obtained in the wake of a warrantless search. When this happens it follows the court errs when it denies the defendant's motion that sought the return of all the non-contraband items.

3.      The court erred when it failed to acquit, not only the money, but the vehicle, the cell phones, the video games, the knife and the scale. This follows given the fact that the only evidence dealing with these items showed the mere presence of these (non-contraband *per se*) items in the car. So postured it follows that here we have a failure of proof that any of these items were "proceeds", as that term is defined.

4.      To warrant a criminal forfeiture of any specific (non-contraband property in this case) property, the State bore the burden of proving the property for which forfeiture was sought constituted proceeds of the offense of conviction, and this it did not do. So postured, given the absence of any such proof here, clearly there is insufficient evidence in the record to support the forfeiture of any of the non-contraband items.

5. The court erred and due process was offended when it denied the defense's objections to questions asked of the defendant as to why he did not discuss segments of his defense with the police when he was stopped and arrested.

6. The court erred, and the defendant was denied due process, when the court, despite *Alleyne v. United States*, 133 S. Ct. 2151 (2013), made the finding that the defendant was a "major drug offender,"-- a finding of the type that could, according to the Supreme Court, only be made by a jury.

(Appx., Exh. 12.) The State filed a brief in response. (Appx., Exh. 13.)

On August 7, 2014, the Ohio appellate court affirmed the trial court's judgment. (Appx., Exh. 15.) Fort moved for reconsideration, which the State opposed. (Appx., Exhs. 16, 17.) The court of appeals denied the motion. (Appx., Exh. 19.) Fort then filed a motion to certify a conflict, which the appellate court also denied. (Appx., Exhs. 20, 21.)

Fort, again represented by the same counsel, filed a timely notice of appeal of the appellate court's judgment to the Ohio Supreme Court. (Appx., Exh. 22.) In his memorandum in support of jurisdiction, he set forth the following propositions of law:

1. Due process is denied when there is a failure to acquit, not only the money, but the vehicle, the cell phones, video games, and a knife, where the only evidence dealing with these items showed their mere presence in the car with the accused.

2. To warrant a criminal forfeiture of specific property, the State bears the burden of proving the property (for which forfeiture was sought) could be related to the offense of conviction. So postured, given the absence of any such proof here, clearly there would be insufficient evidence in the record to support the forfeiture of any non-contraband items.

3. Due process was offended when certain questions were willfully asked of the defendant, to influence the jury, as to why he did not discuss segments of his defense with the police after he was arrested.

4. An accused is denied due process when the court, not the jury, despite *Alleyne v. United States*, 133 S. Ct. 2151 (2013), makes the finding that the defendant was a "major drug offender," and he is sentenced accordingly.

6

(Appx., Exh. 23 (capitalization altered).)

The Ohio Supreme Court declined jurisdiction over the appeal on February 18, 2015.

(Appx., Exh. 24.)

On April 13, 2015, Fort, through the same counsel, filed a petition for writ of certiorari in

the United States Supreme Court.  (Appx., Exh. 25.)  The following questions were presented for

review:

1.  Due Process is invariably denied when the trial court fails to articulate the required factual findings, and fails to indicate any legal theory underlying its decision not to return non-contraband property obtained in the wake of a warrantless search and seizure.

2.  It is a violation of due process when a court orders the forfeiture to the State of certain monies and other personal property (seized in the wake of a traffic stop), in the absence of any evidence whatsoever that even tends to connect the seized items to the offense of conviction.

3.  To warrant a criminal forfeiture of specific property, the State bears the burden of proving the property (for which forfeiture was sought) could be related to the offense of conviction.  So postured, given the absence of any such proof here, clearly there would be insufficient evidence in the record to support the forfeiture of any non-contraband items.

4.  Due process was offended when certain questions were willfully asked of the defendant, to influence the jury, as to why he did not reveal critical segments of his defense to the police after he was arrested.

5.  An accused is denied due process when the Court, not the jury, despite *Alleyne v. United States*, 133 S. Ct. 2151 (2013), makes the finding that the defendant was a "major drug offender," and he is sentenced accordingly.

(Appx., Exh. 25 at 244, 247, 250, 255, 257 (capitalization altered).)  The State waived response,

and the Court denied the petition on April 13, 2015.  (Appx., Exh. 36.)

**C.      Petition for Writ of Mandamus and Motion for Jury Forms**

7

On March 14, 2016, Fort, acting *pro se*, filed an "Emergency Writ of Mandamus with Alternative Writ Request" in the Ohio Supreme Court. (Appx., Exh. 26.) He sought to have the Cuyahoga Court of Common Pleas Judge who presided over his trial, Lance Mason, or the Clerk of Court provide him with an original copy of the jury verdict forms from his trial. (Appx., Exh. 26 at 290.) On March 29, 2016, Fort filed a pro se "Motion to Furnish Jury Verdict Forms for Justifiable Claim (R.C. § 149.43(B)(8)). (Appx., Exh. 27.) The respondents filed a "notice of Judicial Action," with an affidavit attached stating that a completed jury verdict form from the trial could not be located. (Appx., Exh. 28.) The respondents also moved to dismiss the petition. (Appx., Exh. 29.) On June 17, 2016, the Ohio Supreme Court granted the respondents' motion to dismiss. (Appx., Exh. 31.)

## FEDERAL HABEAS CORPUS

Fort, acting *pro se*, filed a petition for writ of habeas corpus on March 7, 2016, in Case No. 1:16 CV 0551, challenging the constitutionality of his convictions and sentences in this case. *State v. Fort*, Case No. CR-13-5725511-A. (Case No. 1:16 CV 0551, Doc. No. 1.) He asserted the following six grounds for relief:

1. Due process is denied when there is a failure to acquit, not only the money, but the vehicle, the cell phones, video games, and a knife, where the only evidence dealing with these items showed their mere presence in the car with the accused.

2. To warrant a criminal forfeiture of specific property, the State bears the burden of proving the property (for which forfeiture was sought) could be related to the offense of conviction. So postured, given the absence of any such proof here, clearly there would be insufficient evidence in the record to support the forfeiture of any non-contraband items.

3. Due process was offended when certain questions were willfully asked of the defendant, to influence the jury, as to why he did not discuss segments of his defense with the police after he was arrested.

8

4.      An accused is denied due process when the court, not the jury, despite *Alleyne v. United States*, 133 S. Ct. 2151 (2013), makes the finding that the defendant was a "major drug offender," and he is sentenced accordingly.

5.      Defective indictment[:] Due process violation since the indictment is only received for filing with deputy clerk signature on it.

6.      No jury verdict forms.  Due process violation.

(Case No. 1:16 CV 0551, Doc. No. 1 at 5, 7, 8, 10, 15.)[4]  Respondent filed a return of writ on July 28, 2016.  (Case No. 1:16 CV 0551, Doc. No. 12.)

Meanwhile, on June 13, 2016, Fort, through counsel, filed a second habeas corpus petition in Case No. 1:16 CV 1449, again challenging the constitutionality of his convictions and sentences in *State v. Fort*, Case No. CR-13-5725511-A.  (Case No. 1:16 CV 1449, Doc. No. 1.) He asserted the following four grounds for relief:

1.      Due Process was invariably denied when the trial court failed to articulate certain required factual findings, and failed to indicate any legal theory underlying its decision not to return any of the monies taken from Petitioner in the wake of his convictions.

2.      Given that to warrant a criminal forfeiture of specific property, the State bears the burden of proving the property (for which forfeiture was sought) could be related to the offense of conviction, and given the absence of any such proof here, clearly there would be insufficient evidence in the record to support the forfeiture of any non-contraband items.

3.      Due process was offended when certain questions were intentionally and improperly asked of Petitioner during his trial (that were willfully crafted), to influence the jury as to why he did not reveal critical segments of his defense to the police while he was being arrested.

4.      An accused is denied due process when the court, not the jury, despite *Alleyne v. United States*, 133 S. Ct. 2151 (2013), make[s] the finding that the defendant was a "major drug offender," and he is sentenced accordingly.

---

[4] Fort misnumbered his last ground for relief as his seventh ground.

9

(Case No. 1:16 CV 1449, Doc. No. 1 at 8 (capitalization altered).)

On June 20, 2016, this Court issued an order in Case No. 1:16 CV 1449, asking Fort to show cause why the petition filed in that case should not be transferred to the Sixth Circuit pursuant to 28 U.S.C. § 2244(b), which bars "second or successive" petitions.  (Case No. 1:16 CV 1449, Doc. No. 6.)  Fort, through counsel, responded that counsel was not aware of Fort's *pro se* petition when he filed the second petition and requested that the second petition be considered the "sole and only" petition.  (Case No. 1:16 CV 1449, Doc. No. 7.)  On July 1, 2016, the Court issued another order, stating that Fort should withdraw one of his petitions by July 11, 2016, because it could not *sua sponte* dismiss the *pro se* petition filed in Case No. 1:16 CV 0551, or the second petition would be transferred to the Sixth Circuit as a second or successive petition.  (Case No. 1:16 CV 1449, Doc. No. 9.)  Fort did not do so, so then-assigned Magistrate Judge Nancy Vecchiarelli recommended that the second petition be transferred to the Sixth Circuit as a second or successive petition for authorization to proceed.  (Case No. 1:16 CV 1449, Doc. No. 10.)  No objections were filed, and on August 5, 2016, District Judge Jack Zouhary transferred the second petition to the Sixth Circuit.  (Case No. 1:16 CV 1449, Doc. Nos. 11, 12.)

On May 4, 2017, the Sixth Circuit determined that Fort's second petition was not second or successive, explaining:

> Federal courts generally may not consider second or successive habeas petitions. See 28 U.S.C. § 2244(b)(1). Fort, however, filed his second petition while his first petition was still pending in the district court. Consequently, the second petition is not considered a "second or successive petition" within the meaning of § 2244(b), but rather should be construed as a motion to amend the first petition. See *Clark v. United States, 764 F*.3d 653, 658, 659 (6th Cir. 2014).

> Accordingly, we DENY Fort's application to file a second or successive petition a unnecessary and TRANSFER this case to the United States District Court for the Northern District of Ohio for further proceedings consistent with this Order.

10

(Case No. 1:16 CV 1449, Doc. No. 14.)

On July 28, 2017, the Court determined that Case No. 1:16 CV 0551 was related to Case No. 1:16 CV 1449, reopened Case No. 1:16 CV 1449, and referred it to the undersigned for further handling.  (Case No. 1:16 CV 1449, Doc. No. 15.)  As instructed by the Sixth Circuit, this Court treated the second petition as a motion to amend his original petition, which the Court granted and held the amended petition would govern both cases.  (*See* Case No. 1:16 CV 0551, Doc. No. 15; Case No. 1:16 CV 1449, Doc. No. 16.)

On September 19, 2017, Respondent filed a supplemental return of writ in Case No. 1:16 CV 1449, which incorporated the arguments presented in his return of writ filed in Case No. 1:16 CV 0551.  (Case No. 1:16 CV 1449, Doc. No. 17 at 2.)  Fort did not file a traverse in either case.

## STANDARDS OF REVIEW

### A.  AEDPA Review

Fort's petition for writ of habeas corpus is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), as it was filed after the Act's 1996 effective date.  *Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Murphy v. Ohio*, 551 F.3d 485, 493 (6th Cir. 2009).  AEDPA, which amended 28 U.S.C. § 2254, was enacted "to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases, and 'to further the principles of comity, finality, and federalism.'"  *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (quoting *(Michael) Williams v. Taylor*, 529 U.S. 420, 436 (2000)).  The Act "recognizes a foundational principle of our federal system:  State courts are adequate forums for the vindication of federal rights."  *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013).  It therefore "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court."  *Id.*

11

One of AEDPA's most significant limitations on district courts' authority to grant writs of habeas corpus is found in § 2254(d). That provision forbids a federal court from granting habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state-court decision either:

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Habeas courts review the "last *explained* state-court judgment" on the federal claim at issue. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis original). A state court has adjudicated a claim "on the merits," and AEDPA deference applies, regardless of whether the state court provided little or no reasoning at all for its decision. *Harrington v. Richter*, 562 U.S. 86, 99 (2011).

 "Clearly established Federal law" for purposes of § 2254(d)(1) "is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). It includes "only the holdings, as opposed to the dicta, of [Supreme Court] decisions." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks and citations omitted). The state-court decision need not refer to relevant Supreme Court cases or even demonstrate an awareness of them; it is sufficient that the result and reasoning are consistent with Supreme Court precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam). And a state court does not act contrary to clearly established law when

the precedent of the Supreme Court is ambiguous or nonexistent.  *See, e.g., Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state-court decision is contrary to "clearly established Federal law" under § 2254(d)(1) only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). And "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

A state-court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528-29 (2003). The petitioner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 134 S. Ct. at 15; *see also Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011). This requirement mirrors the "presumption of correctness" AEDPA affords state-court factual determinations, which only can be overcome by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Supreme Court has cautioned, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt*, 134 S. Ct. at 15 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

Indeed, the Supreme Court repeatedly has emphasized that § 2254(d), as amended by AEDPA, is an intentionally demanding standard, affording great deference to state-court adjudications of federal claims. The Court has admonished that a reviewing court may not "treat[] the reasonableness question as a test of its confidence in the result it would reach under

13

de novo review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 562 U.S. at 102; *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold."). Rather, § 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102-03 (internal quotation marks omitted). Thus, a petitioner "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. This is a very high standard, which the Court readily acknowledges: "If this standard is difficult to meet, that is because it is meant to be." *Id.* at 102.

### B.      Exhaustion and Procedural Default

Under AEDPA, state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982). This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The exhaustion requirement, however, "refers only to remedies still available at the time of the federal petition." *Engle v.*

14

*Isaac*, 456 U.S. 107, 125 n.28 (1982).  It "does not require pursuit of a state remedy where such a pursuit is clearly futile."  *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981).

Procedural default is a related but "distinct" concept from exhaustion.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  Procedural default occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to:  (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available.  *See, e.g., Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806.  In determining procedural default, the federal court again looks to the last explained state-court judgment.  *Ylst*, 501 U.S. at 805; *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000).

Where a state court declines to address a prisoner's federal claims because the prisoner has failed to meet a state procedural requirement, federal habeas review is barred as long as the state judgment rested on "independent and adequate" state procedural grounds.  *Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  To be independent, a state procedural rule and the state courts' application of it must not rely in any part on federal law.  *Id.* at 732-33.  To be adequate, a state procedural rule must be "'firmly established' and 'regularly followed'" by the state courts at the time it was applied.  *Beard v. Kindler*, 558 U.S. 53, 60-61 (2009).

A petitioner also may procedurally default a claim by failing to raise the claim in state court, and pursue the claim through the state's "ordinary appellate review procedures," if, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim. *Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848); *see also Baston v. Bagley*, 282

15

F. Supp. 2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."). Under these circumstances, while the exhaustion requirement is technically satisfied because there are no longer any state-court remedies available to the petitioner, the petitioner's failure to have the federal claims fully considered in the state courts constitutes a procedural default of those claims, barring federal habeas review. *Williams*, 460 F.3d at 806 ("Where state court remedies are no longer available to a petitioner because he or she failed to use them within the required time period, procedural default and not exhaustion bars federal court review."); *see also Gray v. Netherland*, 518 U.S. 152, 161-62 (1996) ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' . . ., it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law' . . . ." (internal citations omitted)).

Furthermore, to "fairly present" a claim to a state court, a petitioner must assert both its legal and factual basis. *Williams*, 460 F.3d at 806 (citing *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)). Most importantly, a "'petitioner must present his claim to the state courts as a federal constitutional issue - not merely as an issue arising under state law.'" *Id.* (quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)).

A petitioner may overcome procedural default by demonstrating cause for the default and actual prejudice that resulted from the alleged violation of federal law, or that there will be a "fundamental miscarriage of justice" if the claim is not considered. *Coleman*, 501 U.S. at 750. "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot be fairly attributed to him." *Id.* "[T]he existence of cause for a procedural

default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id*. "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

## C.   Cognizability

To the extent that claims asserted in federal habeas petitions allege state-law violations, they are not cognizable on federal habeas review and should be dismissed on that basis.  "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241); *see also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."); *Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (citation omitted)).

Moreover, "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citing *Estelle*, 502 U.S. at 67-68).  A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure.  *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988).

State-court rulings on issues of state law may, however, "rise to the level of due process violations [if] they 'offend[] some principle of justice so rooted in the traditions and conscience

17

of our people as to be ranked as fundamental.'"  *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir.

2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)).  But they must be "so egregious

that [they] result in a denial of fundamental fairness."  *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th

Cir. 2003).  Fundamental fairness under the Due Process Clause is compromised where "the

action complained of . . . violates those 'fundamental conceptions of justice which lie at the base

of our civil and political institutions,' . . . and which define 'the community's sense of fair play

and decency.'"  *Dowling v. United States*, 493 U.S. 342, 353 (1990) (internal citations omitted).

The Supreme Court, therefore, "ha[s] defined the category of infractions that violate

'fundamental fairness' very narrowly."  *Id*. at 352.

## ANALYSIS

### A.      Grounds for Relief One and Two: *Forfeiture*

For his first and second grounds for relief, Fort argues the trial court violated his due

process rights by ordering the forfeiture of cash and other "non-contraband" property that was

not shown to have any connection to the charges against him.  (Case No. 1:16 CV 1449, Doc.

No. 1 (hereinafter "Amended Petition") at 19-27.)  Respondent argues this claim is not

cognizable on federal habeas corpus review.  (Case No. 1:16 CV 0551, Doc. No. 12 (hereinafter,

"Return of Writ") at 16-21.)  The Court agrees.

AEDPA's § 2254(a) provides that "a district court shall entertain an application for a writ

of habeas corpus in half of a person in custody pursuant to the judgment of a State court only on

the ground that he is in custody in violation of the Constitution or law or treaties of the United

States."  28 U.S.C. § 2254(a).  This language makes clear, the Supreme Court has explained, that

"the essence of habeas corpus is an attack by a person in custody upon the legality of that

18

custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A petitioner must contend, therefore, that "he is being unlawfully subjected to physical restraint," and habeas corpus is "the specific instrument to obtain release from such confinement."  *Id*. at 486.

Fort frames his forfeiture claims as due process violations.  But he does not challenge the constitutionality of his "custody," or confinement, pursuant to his state criminal conviction, as AEDPA requires.  Instead, he challenges the state court's forfeiture sentences.  As the Sixth Circuit has observed, "[a] monetary fine is not a sufficient restraint on liberty to meet the 'in custody' requirement'" for federal habeas purposes.  *United States v. Watroba*, 56 F.3d 28, 29 (6th Cir. 1995) (quoting *United States v. Segler*, 37 F.3d 1131, 1137 (5th Cir. 1994)) (reviewing a § 2255 habeas petition).  *See also Johnson v. Turner*, 2015 WL 3967673, at *15-16 (N.D. Ohio June 30, 2015) ("since Johnson's challenge to the forfeiture of his assets is not a challenge to the legality of his custody under the federal Constitution, laws or treaties of the United States, Ground Two is not cognizable in federal habeas review"); *McGee v. United States*, 2010 WL 310770, * 6 (W.D. Mich. Jan. 21, 2010) ("[f]orfeiture sentences are not cognizable in § 2255 proceedings" because granting relief as to petitioner's challenges to the forfeiture sentence would not impact his confinement).

The Court finds, therefore, that Fort's first and second grounds for relief are not cognizable on federal habeas review, and recommends that they be dismissed.

**B.      Ground for Relief Three:  *Doyle Claim***

For his third ground for relief, Fort claims the prosecutor improperly impeached him

by questioning him at trial about his silence after being arrested and informed of his right to remain silent under *Miranda v. Arizona*, 384 U.S. 436 (1966). (Amended Petition at 27-29.) Respondent argues this claim is meritless. (Return of Writ at 23-25.)

The state appellate court, the last state court to address this claim, reasoned:

{¶ 24} In Fort's fifth assignment of error, he argues that the trial court violated his due process rights when it allowed the state to ask him questions regarding his conversation with the police when he was arrested. He argues that the trial court committed reversible error when the state asked a question relating to Fort's post-arrest conversation with police.

{¶ 25} On cross-examination, the prosecutor asked Fort to describe details about the chase on the day he was arrested. Fort testified that when the police stopped him after the chase, he threw a gun out of the window in order to avoid having the police find it. The prosecutor then asked Fort, "[a]t any point during your arrest did you tell police?" Fort's attorney objected and stated that "[h]e's not obligated to tell the police anything including his name." The court sustained this objection. Fort argues that despite the court's ruling, this line of questioning constitutes reversible error pursuant to *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). However we find *Doyle* is inapplicable to this case.

{¶ 26} In *Doyle*, the United States Supreme Court held that "it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." *Id.* at 618, 96 S.Ct. 2240. In contrast, in this case the state's inquiry about whether Fort told the police about the gun was not asked in order to impeach any version of events previously offered by Fort.

{¶ 27} On direct examination, Fort testified that after he won money gambling, he asked a friend to borrow a gun for protection in the event that he was robbed. Fort stated that once he realized he was being pulled over by the police, he panicked due to his having the gun and his prior run-ins with police. Fort admitted to being in illegal possession of the gun and explained to the jury that his fear of police uncovering the gun was the reason he fled. Fort was not offering any explanation related to the violations for which he was charged and the state's question did not seek to disprove any prior account of the events. *Doyle* is therefore not on point. Additionally, the trial court sustained the objection before Fort had a chance to answer the question, so the jury remained unaware of whether Fort said anything to the police about the gun. We see no prejudice derived from the question. Fort's fifth assigned error is overruled.

*Fort*, 17 N.E.3d at 1178.

As the state appellate court correctly explained, the Supreme Court held in *Doyle v. Ohio,*
426 U.S. 610, 618 (1976), that a prosecutor violates a defendant's due process rights by using the
defendant's post-arrest silence after receiving *Miranda* warnings to impeach the defendant's
exculpatory trial testimony.  *Gravely v. Mills*, 87 F.3d 779, 786 (6th Cir. 1996).  This rule
"rest[s] on the presumption that it [is] fundamentally unfair to assure a suspect that his silence
would not be used against him and then to use his silence to impeach an explanation
subsequently offered at trial."  *Id.* (citing *Wainwright v. Greenfield*, 474 U.S. 284, 291(1986)).

Fort argues the prosecutor violated his due process rights under *Doyle* when he asked him
the following question during cross-examination:

> Q:      At any point during your arrest did you tell the police.
>
> Mr. Willis:      Objection.  He's not obligated to tell the police anything
> including his name.
>
> The Court:      No speaking objections.  Just one word.  Complete the
> question and don't answer until I hear the full question.
>
> Q:      At any point during this, when you were down on the ground with Officer
> Pozek, did you tell him I just threw the gun?
>
> Mr. Willis:      Objection.
>
> The Court:      Sustained.
>
> Mr. Paul:      One moment, your Honor.
>
> Q:      Mr. Fort, you said you did odd jobs for a living?

(Appx., Exh. 37 at 498.)  Fort contends the state appellate court was unreasonable in concluding
that the prosecutor's inquiry did not violate *Doyle* and furthermore did not prejudice him.  The
Supreme Court, however, in a case directly on point, has expressly rejected Fort's argument.

21

In *Greer v. Miller*, 483 U.S. 756 (1987), as in this case, the state trial court sustained an immediate objection to a prosecutor's single question that touched upon the defendant's post-arrest silence, and instructed the jury to "ignore [the] question, for the time being."  *Id*. at 756. The prosecutor did not pursue the issue further or mention it during his closing argument.  *Id*. The judge's final instructions to the jury included an admonition to "disregard questions . . . to which objections were sustained."  *Id*.  The Court in *Greer* found that "the sequence of events at the trial, beginning with the single comment – but including particularly the proper and immediate action by the trial court, and the failure by defense counsel to request more specific instructions – indicates [the defendant's] postarrest silence was not used against him within the meaning of *Doyle*."  *Id*. at 764 n.5.  *Doyle*'s holding, it explained, "is that the Due Process Clause bars '*the use* for impeachment purposes' of a defendant's postarrest silence."  *Id*. at 763 (emphasis in original) (quoting *Doyle*, 426 U.S. at 619).  The Court also noted that it observed in *Doyle* that "'it does not comport with due process *to permit* the prosecution during trial to call attention to [the defendant's] silence.'"  *Id*. at 763-64 (emphasis in original) (quoting *Doyle*, 426 U.S. at 619).  The Court therefore held that a *Doyle* violation had not occurred in *Greer* because the trial court "did not permit the inquiry that *Doyle* forbids."  *Id*. at 764.  It reasoned:

> Unlike the prosecutor in *Doyle*, the prosecutor in this case was not "allowed to undertake impeachment on," or "permit[ted] ... to call attention to," Miller's silence. 426 U.S., at 619, and n. 10, 96 S.Ct., at 2245, and n. 10. The fact of Miller's postarrest silence was not submitted to the jury as evidence from which it was allowed to draw any permissible inference, and thus no *Doyle* violation occurred in this case.

*Id*. at 764-65 (footnote omitted).  The Court further held that the prosecutor's *attempt* to violate the *Doyle* rule did not violate the defendant's due process rights by "render[ing] his trial

22

fundamentally unfair" given "[t]he sequence of events in [the] case – a single question, an immediate objection, and two curative instructions . . . ." *Id*. at 765-66.

Similarly, here, the trial court stopped the prosecutor from using Fort's post-arrest, post-*Miranda* silence to impeach him. The court sustained defense counsel's immediate objection to the prosecutor's question relating to Fort's silence before Fort could respond. Also like *Greer*, Fort's counsel did not request a specific instruction to the jury about the challenged question at that time, and the prosecutor did not broach the subject again through further questioning or argument. In this case, however, the trial court's jury instructions are not included in the trial transcript submitted to this Court, so it is impossible to know if the trial judge gave the customary jury instruction, as the trial court did in *Greer,* directing jurors to disregard questions to which the court sustained an objection. Ohio courts generally issue such an instruction,[5] but this Court cannot assume that was done here. Nevertheless, applying AEDPA's deferential standard of review, *Greer* remains controlling and Fort's *Doyle* claim fails: "the sequence of events at the trial, beginning with the single comment – *but including particularly* the proper and immediate action by the trial court, and the failure by defense counsel to request more specific

---

[5] *See* 1 O.J.I. 5.20 (2-3) ("Statements or answers ordered stricken, or to which the Court sustained an objection, or which you were instructed to disregard are not evidence and must be treated as though you never heard them. . . . You must not guess why the Court sustained the objection to any question or what the answer to such question might have been. You must not consider as evidence any suggestion included in a question that was not answered."); Ohio Judicial Conference, *Ohio Jury Instructions*, CR 207.03 (7) ("The evidence does not include any statements that were stricken by the Court or that you were instructed to disregard. You must not speculate why an objection was sustained to any question or what the answer to that question might have been because these are questions of law and rest solely with the Court."). Additionally, jurors are presumed to follow the court's instructions. *See, e.g.*, *Burton v. United States*, 391 U.S. 123, 142 (1968) (White, J., dissenting) ("juries can reasonably be expected to disregard ordinary hearsay or other inadmissible evidence when instructed to do so"); *Richardson v. Marsh*, 481 U.S. 200, 211 (1987); *Washington v. Hofbauer*, 228 F.3d 689, 706 (6th Cir. 2000).

instructions – indicates [Fort's] postarrest silence was not used against him within the meaning of *Doyle*." *Greer*, 483 U.S. at 764 n.5 (emphasis added). *See also Tinsley v. Million*, 399 F.3d 796, 814-15 (6th Cir. 2005) (citing *Greer* for the proposition that "[i]n sustaining the objection, the trial court's action alone may have sufficed to cure the improper answer" under *Doyle* of a State witness regarding the petitioner's reticence to talk to police without an attorney present); *Shaieb v. Burghuis*, 499 Fed. Appx. 486, 497-500 (6th Cir. 2012) (applying *Greer* and finding no *Doyle* violation where prosecutor made several references to petitioner's post-arrest, post-*Miranda* silence because "no testimony was actually elicited regarding the defendant's silence" and trial court took "sufficient steps . . . to ensure that Petitioner's due process rights were not violated").

Moreover, even if the trial court did commit a *Doyle* error, it was harmless. *See, e.g., Jaradat v. Williams*, 591 F.3d 863, 868-69 (6th Cir. 2010) (harmless-error standard applies to *Doyle* violations). A constitutional error is harmless unless it "had [a] substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). This Court cannot find that the prosecutor's single question relating to Fort's post-arrest silence had a substantial effect on the jury's verdict, where the trial court sustained defense counsel's immediate objection to the question and Fort never answered it; defense counsel did not request a specific curative instruction or move for a mistrial after the question at issue was posed; and the prosecutor did not question Fort about his post-arrest silence again or discuss the subject in his closing argument.[6]

---

[6] Still, the Court is disturbed by the prosecutor's question, with its explicit and clearly improper reference to Fort's post-arrest, post-*Miranda* silence.

The state appellate court's decision rejecting Fort's *Doyle* claim, therefore, was neither contrary to, nor an unreasonable application of, *Doyle*, and the Court recommends that Fort's third ground for relief be dismissed.

**C.  Fourth Ground for Relief: *Sentencing Error***

Fort's fourth ground for relief alleges the state trial court violated his Sixth Amendment right to a jury trial when it designated him a major drug offender, resulting in an enhanced sentence.  (Amended Petition at 29-34.)  Respondent argues this claim is meritless.  (Return of Writ at 25-31.)

The state appellate court was the last state court to address this claim, opining:

{¶ 28} In Fort's sixth and final assigned error, he argues that the trial court erred when it found him to be a major drug offender. According to Fort, the trial court's finding violates the United States Supreme Court decision in *Alleyne v. United States*, 570 U.S. ——, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013). Fort argues that under *Alleyne*, only the jury can make a determination regarding any fact that increases his sentence. Fort is correct, however, *Alleyne* is inapplicable to the facts in this case.

{¶ 29} In *Alleyne*, the jury relied on the testimony of the victim of an armed robbery that one of the perpetrators possessed a gun. The trial court relied on the same testimony to determine that Alleyne or his accomplice brandished a gun. The testimony was the same, but the findings were different. The jury found that Alleyne possessed a gun, but made no finding with regard to whether the weapon was brandished. The court, however determined that the gun was brandished. The Supreme Court reviewed the statutory punishment structure, which included a mandatory minimum sentence of five years if a crime of violence was committed while the offender carried a firearm, seven years if the firearm was brandished, and ten years if the firearm was discharged during the crime. 18 U.S.C. 924(c)(1)(A). The crime was otherwise punishable by a term of imprisonment not exceeding 20 years. 18 U.S.C.1951(a). The court held that where facts were not found by a jury that enhanced the mandatory minimum penalty for a crime, principles of the Sixth Amendment were violated. *Alleyne* at paragraph one of the syllabus. Specifically, "[b]ecause mandatory minimum sentences increase the penalty for a crime, any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." *Id*. Indeed,

25

> "[j]uries must find any facts that increase either the statutory maximum or minimum because the Sixth Amendment applies where a finding of fact both alters the legally prescribed range *and* does so in a way that aggravates the penalty." [*Alleyne* at fn. 1] "When a finding of fact alters the legally prescribed punishment so as to aggravate it, the fact necessarily forms a constituent part of a new offense and must be submitted to the jury." *Id.* [at 2162.]

*People v. Osuna*, 225 Cal.App.4th 1020, 1039, 171 Cal.Rptr.3d 55 (2014).

{¶ 30} Ohio's major drug offender specifications designate a defendant convicted of possessing or trafficking a certain amount of drugs a major drug offender and require courts to impose as a mandatory sentence the maximum prison term prescribed for the commission of the offense. For example, R.C. 2925.03(C)(4) provides in part:

> (f) If the amount of the drug involved equals or exceeds *twenty-seven grams but is less than one hundred grams* of cocaine and regardless of whether the offense was committed in the vicinity of a school or in the vicinity of a juvenile, *trafficking in cocaine is a felony of the first degree*, and the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the first degree.

> (g) If the amount of the drug involved equals or exceeds *one hundred grams of cocaine* and regardless of whether the offense was committed in the vicinity of a school or in the vicinity of a juvenile, trafficking in cocaine is a *felony of the first degree, the offender is a major drug offender, and the court shall impose as a mandatory prison term the maximum prison term prescribed for a felony of the first degree.*

(Emphasis added.) So in order for a jury to find defendants guilty of a first-degree felony offense of drug trafficking or drug possession dealing with cocaine, it must find that they possessed over 27 grams of the drug. For a court to sentence defendants as major drug offenders, the court must find that they possessed over 100 grams of cocaine. These are two different findings that rely on the same evidence.

{¶ 31} In *Harris v. United States,* 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002), the Supreme Court held that judicial fact-finding that increases the mandatory minimum sentence for a crime is permissible under the Sixth Amendment. In *Alleyne*, the court specifically overruled Harris and held that the imposition of a mandatory minimum sentence above the normal minimum punishment set by statute is an increase in the punishment a defendant may receive. Therefore, elements necessary for a court to impose such an enhancement must be found by the trier of fact.

26

{¶ 32} The Supreme Court's decision in *Alleyne* leads to the conclusion that Ohio's major drug offender statutes could be constitutionally infirm where a trial court makes factual determinations, apart from those made by the jury, that are used to enhance a defendant's minimum sentence. But this is not the scenario we have before us. In Fort's case, the jury made the determination that he possessed over 100 grams of cocaine. As a result, the court did not have to make any factual determination that enhanced the minimum penalty of an offense in contravention of the dictates of the Supreme Court in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and now *Alleyne*. The enhancing element was found by the jury.

{¶ 33} While the jury was only required to find that Fort possessed more than 27 grams of cocaine in order to find him guilty of a first-degree felony, the jury found that appellant possessed over 100 grams. The transcript provides, "[w]ith respect to the further finding, we the jury in this case find that the [appellant] is guilty of trafficking in drugs. We further find that the amount of the controlled substance in Count 1, to-wit, cocaine, was an amount at least equal to or in excess of a hundred grams." Tr. 228. Therefore, the fact necessary for the court to find that Fort is a major drug offender and sentence him to the maximum term of incarceration is a fact found by the jury. Therefore, Fort's Sixth Amendment right to a jury trial was not violated by the court's finding. This final assigned error is overruled.

*Fort*, 17 N.E.3d at 1178-80.

Fort does not claim the state appellate court incorrectly stated the law set forth in *Alleyne v. United States*, 570 U.S. 99, 133 S. Ct. 2151, 2155 (2013). Rather, he argues the court unreasonably applied *Alleyne* when it concluded it was the jury, not the trial court, that found the fact necessary – Fort's possession of more than 100 grams of cocaine – for the court to designate Fort a major drug offender and enhance his sentence accordingly. (*See, e.g.*, Amended Petition at 31.) Fort asserts the trial court alone had the authority to determine his major-drug-offender status. He points to the Ohio statute governing the major-drug-offender specification, which provides, "The court shall determine the issue of whether an offender is a major drug offender." (Amended Petition at 31-32 (quoting Ohio Rev. Code § 2941.1410[A]).)[7]

_____

[7] Fort also appears to argue the indictment was defective under *Alleyne*. (*See* Amended Petition at 32-33.) To the extent he presents this argument, however, it is not cognizable on federal

In *Alleyne*, however, the Court held that "any *fact* that increases the mandatory minimum is an 'element' that must be submitted to the jury."  *Alleyne*, 133 S. Ct. at 2155 (emphasis added).  What made Fort a major drug offender under Ohio law was the amount of cocaine police found in his possession when he was arrested.  This issue was submitted to the jury, which found that Fort possessed at that time more than 100 grams of cocaine.  The state appellate court reasonably drew a distinction between this *factual finding* of the jury, and the trial court's *legal conclusion* that Fort met the statutory definition of a major drug offender and was therefore subject to the enhanced sentence attached to that specification.

The Court finds, therefore, that the state appellate court's decision neither contravened nor misapplied *Alleyne*, and recommends that this claim be dismissed.

## CONCLUSION AND RECOMMENDATION

For the reasons stated above, the Court recommends that Petitioner Richard Fort's amended petition for writ of habeas corpus (Case No. 1:16 CV 1449, Doc. No. 1) and related

---

habeas review.  It is well settled that there is no federal constitutional right to an indictment in state criminal proceedings.  *See, e.g., Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984) (citing *Brazenburg v. Hayes*, 408 U.S. 665 (1972)).  Indeed, "the Constitution does not require any particular state indictment rule. In fact, it does not require an indictment at all if sufficient notice of the charges is given in some other manner."  *Id*.

Case No. 1:16 CV 0551 be DISMISSED in their entirety, because the claims raised are non-

cognizable and/or meritless.


Date:   December 29, 2017                    _s/ Jonathan Greenberg_____
                                            Jonathan D. Greenberg
                                            United States Magistrate Judge



## OBJECTIONS

     **Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**